**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| **ANTOINETTE SMEDLEY,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **CIVIL ACTION FILE NO.** |
| **v.** | : | **1:17-CV-03475-TWT-AJB** |
| | : | |
| **OCWEN LOAN SERVICING,** | : | |
| **LLC; ALDRIDGE PITE, LLP; and** | : | |
| **MORTGAGE ELECTRONICS** | : | |
| **REGISTRATION SYSTEMS, INC.,** | : | |
| | : | |
| **Defendants.** | : | |

**UNITED STATES MAGISTRATE JUDGE'S ORDER**
**AND FINAL REPORT AND RECOMMENDATION**

Presently before the Court are Defendants' motions to dismiss, [Docs. 3, 4], and

Plaintiff's Opposition Motion for Remand or a More Definite Statement, [Docs. 9, 14].

For the reasons set forth herein, the undersigned **RECOMMENDS** that Defendants'

motions be **GRANTED** and Plaintiff's motions be **DENIED**.  Further, construing

Plaintiff's motion for a more definite statement as a motion to amend, the motion is

**DENIED**.

## I.     *Background*

### A.     **Procedural Background**

Plaintiff was represented by an attorney in this matter until November 16, 2017, when she filed a notice of withdrawal of counsel due to counsel's hospitalization and thereafter proceeded pro se.  [Docs. 5, 8].

Plaintiff initially filed her verified complaint in the Superior Court of Rockdale County, Georgia on July 28, 2017.  [Doc. 1-1 at 4].[1]  On September 11, 2017, Defendants Mortgage Electronic Registration Systems, Inc. ("MERS") and Ocwen Loan Servicing, LLC ("Ocwen") removed the case to this Court, on the grounds of diversity jurisdiction. [Doc. 1 at 1].  Although Plaintiff's claims are not clearly set forth in the complaint in separate counts, the Court gleans that Plaintiff's claims include:

(1)     "fraudulent loan misrepresentation" by MERS and Global Mortgage Group, Inc. ("GMG")[2] in violation of O.C.G.A. §§ 13-8-2 and 14-2-204 (designated in the complaint as "First Cause of Action"), [Doc. 1-1 at ¶¶ 35-50];

(2)     Defendants' liability for GMG's violation of the Georgia Residential Mortgage Act ("GRMA"), O.C.G.A. § 7-1-1013 *et seq*.,

---

[1]     The Rockdale County Superior Court Clerk assigned the matter Case No. 2017-CV-1918.  [Doc. 1-1 at 4].

[2]     Global Mortgage Group, Inc. is not a named party in this action.

2

(designated in the complaint as "Second Cause of Action"),
[*id.* at ¶¶ 51-65];

(3)     Ocwen's and Aldridge Pite, LLP's ("Aldridge"), as loan servicer
        and counsel respectively, liability for GMG's fraud, and violation
        of the GRMA and O.C.G.A. § 23-2-114   (designated in the
        complaint as "Third Cause of Action"), [*id.* at ¶¶ 65-80];

(4)     slander of title (designated in the complaint as "Count III: Slander
        of Title"), [*id.* at ¶¶ 96-97];

(5)     trespass under O.C.G.A. § 51-9-4 (designated in the complaint as
        "Count III: Slander of Title"), [*id.* at ¶¶ 98-100];

(6)     false light invasion of privacy (designated in the complaint as
        "Count III: Slander of Title"), [*id.*];

(7)     breach of the mortgage contract (designated in the complaint as
        "Count IV: Breach of Contract and Wrongful Foreclosure"),
        [Doc. 1-1 at ¶ 101];

(8)     wrongful foreclosure [*id.*]; and

(9)     breach of covenant of good faith and fair dealing (designated in the
        complaint as "Count V: Breach of Covenants of Good Faith and
        Fair Dealings"), [Doc. 1-1 at ¶¶ 102-106].

The relief requested also is not clearly set forth, but the Court gleans that it

includes:

(1)     a declaratory judgment that any transfers of the loan from GMG
        were fraudulent and void, (designated in the complaint as "Fifth
        Cause of Action"), [*id.* at ¶ 88-90];

3

(2)     voiding of MERS assignments (designated in the complaint as "Fourth Cause of Action"), [*id.* at ¶¶ 81-87];

(3)     cancellation of the Deed (designated in the complaint as "Damages: Count I" and "Two"), [*id.* at ¶¶ 91-95]; and

(4)     actual damages of $214,900 as well as punitive damages for slander of title and trespass (designated in the complaint as "Count III: Slander of Title"), [*id.* at ¶¶ 96-100].

Aldridge, [Doc. 3], and Ocwen and MERS, [Doc. 4], filed separate motions to dismiss on September 18, 2017. Plaintiff did not respond to the motions.[3] Instead, on October 12, 2017, Plaintiff filed an emergency motion for a thirty-day stay, alleging that her counsel had been hospitalized on September 8, 2017 and would be in recovery indefinitely. [Doc. 5]. The Court stayed proceedings for thirty days from entry of the order or until Plaintiff secured new counsel, whichever happened first. [Doc. 6]. On

_____

[3]     There is a 14-day response deadline mandated by this Court's Local Rules. *See* N.D. Ga. R. 7.1.B. A plaintiff's failure to file a timely response "shall indicate there is no opposition to the motion." *Id.* It is within the discretion of the Court to decline to consider any motion that fails to comply with the Local Rules. *Id.*, 7.1.F. Without condoning Plaintiff's failure to adhere to the Local Rules, this Court declines to summarily dismiss the case solely on procedural grounds but, instead, reviews the merits of the instant motions. *See Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1332, 1339 (11th Cir. 2014) ("[W]e have a strong preference for deciding cases on the merits—not based on a single missed deadline—whenever reasonably possible."); *Wahl v. McIver*, 773 F.2d 1169, 1174 (11th Cir. 1985) (per curiam) (noting the Eleventh Circuit's "strong preference that cases be heard on the merits," rather than letting disputes be decided based on procedural errors or technicalities).

4

November 16, 2017, Plaintiff filed a notice of withdrawal of counsel, [Doc. 8], which

the Court construed as her consent to the withdrawal of counsel, [Doc. 10].   On

November 16, 2017, Plaintiff filed an Opposition Motion for Remand or More Definite

Statement.   [Doc. 9].   Defendants filed separate responses on December 1, 2017.

[Docs. 11, 12].   Plaintiff then re-filed her motion for remand on January 12, 2018.

[Doc. 14].

> B.      **Factual Background**

In evaluating the sufficiency of a complaint, a court "must accept the facts

pleaded as true and construe them in a light most favorable to [the] plaintiff[]." *Quality*

*Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp., S.A.*, 711 F.2d 989,

994-95 (11th Cir. 1983).   At the same time, however, a court should not accept

"conclusory allegations, unwarranted deductions of facts or legal conclusions

masquerading as facts."   *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188

(11th Cir. 2002).

On May 20, 2006, Plaintiff executed a Security Deed ("the Deed")[4] in exchange

for an original loan principal of $276,000 from GMG to purchase 1661 Brentwood

---

[4]      The Deed  was recorded with the Rockdale County Superior Court on
May 26, 2006 in Book 3891, pages 224-243.  [Docs. 1-1 at 38; 3-1 at 23-42].

5

Crossing, SE, Conyers, Georgia, 30113 ("the Property").  [Docs. 1-1 at 38; 3-1 at 23-

42].  MERS was named as the grantee under the Deed.  [*Id.*].[5]  On May 26, 2006,

_____

[5]      A court generally cannot consider matters outside of a complaint when reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) or a Rule 12(c) motion for judgment on the pleadings.  *See* Fed. R. Civ. P. 12(d) (requiring courts to treat a motion to dismiss or for judgment on the pleadings as a Rule 56 motion for summary judgment when they consider matters outside of the complaint);  *see also Fetterhoff v. Liberty Life Assur. Co.*, 282 Fed. Appx. 740, 743 n.1 (11th Cir. June 17, 2008) (motion for judgment on the pleadings); *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1260 n.2 (11th Cir. 2006) (motion to dismiss).  Thus, courts ordinarily only consider allegations in the complaint and documents attached to the complaint when analyzing a motion to dismiss or for judgment on the pleadings.  *See Fin. Sec. Assur., Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284 (11th Cir. 2007).

        Thus, in ruling on a motion to dismiss, the Court may consider documents attached to the motion if those documents are central to the complaint and not in dispute.  *See Harris v. Ivax Corp.*, 182 F.3d 799, 802 n.2 (11th Cir. 1999); *Okim v. Bank of Am.*, No. 1:12-cv-01759-TWT-GGB, 2012 WL 5930613, at *3 (N.D. Ga. Oct. 25, 2012) (noting that the court is authorized to consider documents attached to motions to dismiss where "the document is central to Plaintiff's claims, and the authenticity of the document has not been challenged").  The Court may also take judicial notice of public records, such as real estate records and court filings.  *See Universal Express, Inc. v. S.E.C.*, 177 Fed. Appx. 52, 53 (11th Cir. Apr. 18, 2006).  *Cf.  Alexander v. Bank of America, N.A.*, No. 2:13-CV-0067-RWS, 2014 WL 106349, at *5 (N.D. Ga. Jan. 10, 2014) (dismissing attempted wrongful foreclosure claim where the plaintiff did not dispute his default on the underlying obligation but simply disputed whether the defendant was the proper entity to call his loan into default).  Here, the Court will take judicial notice of the public records attached to the parties' filings in this case.

Plaintiff executed a Note[6] promising to pay GMG $276,000 plus interest for a loan used to secure the Property.  [Doc. 3-1 at 44-47].  In September 2009, MERS assigned[7] the Deed to Deutsche Bank Trust Company Americas ("Deutsche Bank") as trustee for RALI 2006Q59.  [*Id.* at 39].

Plaintiff claims that MERS was an agent for GMG and because GMG was not registered with the Georgia Secretary of State when the Deed was executed, that she was "misled and falsely induced . . . to sign a loan under false pretenses that it had met GRMA's licensing and registration compliances." [Doc. 1-1 at ¶¶ 12-13]. Plaintiff also claims that MERS should have been aware GMG was unlicensed and  assigned the Deed "under fraudulent assumption of authority."  [*Id.* at ¶¶ 14-15].   Plaintiff asserts that Ocwen, as the loan servicer, "became the principal architect in a scheme to deprive Plaintiff of her right to contest the loan" by hiring Aldridge to "collect against a

---

[6]      Defendant Aldridge submits that the Court may consider the Note as part of the pleadings without converting the motion to dismiss into one for summary judgment, because the Note as central to the complaint and undisputed.  [Doc. 3-1 at 2 n.1].  Even though the Note does not appear to be a matter of public record, [*id.* at 44-47], and Plaintiff asserts that this transaction involved fraud, [Doc. 1-1 *passim*], she does not appear to disputer the *authenticity* of the Note and it is central to her claims. Therefore, the Court may consider the Note as part of the pleadings without converting the motion.

[7]      The Assignment was recorded with the Rockdale County Superior Court on August 24, 2009 in Book 4754, page 4.  [Doc. 1-1 at 39].

7

questionable debt, as their guise to conceal the invalidity of the loan." [*Id.* at ¶¶ 16-17].

Plaintiff claims that Aldridge "misrepresented the amount due for collections" and "threaten and published misleading public notices to foreclosure[.]" [*Id.* at ¶ 17].

Plaintiff defaulted on her payments due under the loan[8] and Ocwen hired Aldridge to conduct a non-judicial foreclosure sale but, as of yet, there has been no foreclosure sale of the Property. [Doc. 4-1 at 3]. Documents attached to Plaintiff's complaint appear to reflect her default, including:

(1)   An Acknowledgment and Waiver of Borrower's Rights Rider[9] to the Deed, executed May 28, 2008, [Doc. 1-1 at 60];

(2)   Correspondence to Plaintiff from Ocwen dated June 6, 2017 that informs her she may be eligible for loan modification, [*id.* at 42-44];

---

[8]   A district court may take judicial notice of pleadings and orders from prior cases as public records. *Krauser v. Evollution IP Holdings, Inc.*, 975 F. Supp. 2d 1247, 1251-52 (S.D. Fla. 2013) (citing *Horne v. Potter*, 392 Fed. Appx. 800, 802 (11th Cir. Aug. 16, 2010). Previous records in this Court indicate that, in 2014, Plaintiff filed a suit against Deutsche Bank and its foreclosure counsel seeking to void the assignment. *Smedley v. Deutsche Bank Trust Company Americas and McCurdy & Candler, LLC*, No. 1:14-cv-00283-ELR-GGB, Docs. 33, 38. In that case, the Court found that "[p]rior to May 12, 2012 and continuing, Plaintiff defaulted on the Loan [represented by the Deed] by failing to make the necessary monthly payments." *Id.*, Doc. 33 at 7.

[9]   The document was recorded with the Rockdale County Superior Court in Book 3891, page 241. [Doc. 1-1 at 60].

AO 72A
(Rev.8/8
2)

(3)     Correspondence from Aldridge to Plaintiff dated June 8, 2017 stating that she owes $402,018.17 to Deutsche Bank on a loan for which Ocwen is a servicer, [*id.* at 57];

(4)     A Revocation of Power of Attorney[10] executed by Plaintiff on July 12, 2017, purporting to revoke "any and all rights given at the closing to" GMG, [*id.* at 58-59];

(5)     Correspondence from Plaintiff to Ocwen dated July 20, 2017 that purports to respond to debt collection letters and act as a self-executing contract requiring Ocwen to respond to the claims outlined by Plaintiff, [*id.* at 45-50]; and

(6)     Correspondence from Plaintiff to Aldridge dated July 21, 2017 that purports to respond to debt collection letters and act as a self-executing contract requiring Aldridge to respond to the claims outlined by Plaintiff, [*id.* at 51-56].

## II.     *Plaintiff's Motion to Remand or For a More Definite Statement*

### A.     Motion for Remand

#### 1.     *Legal Standards*

A defendant may remove a case from state to federal court if the federal court has original jurisdiction over the case.  28 U.S.C. § 1441(a).  However, "a court should inquire into whether it has subject matter jurisdiction at the earliest possible stage in the proceedings.  Indeed, it is well settled that a federal court is obligated to inquire into

---

[10]     The document was recorded with the Rockdale County Superior Court on July 13, 2017 in Book 6103, page 18-21.  [Doc. 1-1 at 58].

9

subject matter jurisdiction *sua sponte* whenever it may be lacking." *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999). Thus, a "district court first must determine whether it has original jurisdiction over the plaintiff's claims." *Id.* "The district court may remand a case *sua sponte* for lack of subject matter jurisdiction at any time." *Corporate Mgmt. Advisors, Inc. v. Artjen Complexus, Inc.*, 561 F.3d 1294, 1296 (11th Cir. 2009); *see also* 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."). Accordingly, the Court addresses, first, whether this case was properly removed to the Court.

Original jurisdiction under § 1441 arises if there is diversity-of-citizenship jurisdiction or federal-question jurisdiction. *Geddes v. Am. Airlines, Inc.*, 321 F.3d 1349, 1352 n.2 (11th Cir. 2003); *Blab T.V. of Mobile, Inc. v. Comcast Cable Commc'ns, Inc.*, 182 F.3d 851, 854 (11th Cir. 1999). Defendants removed this case from state court on the basis of diversity-of-citizenship jurisdiction. [Doc. 1 at 1]. In order for a matter to be removable based on diversity-of-citizenship jurisdiction, the citizenship of all plaintiffs must be diverse from the citizenship of all defendants, and the amount in controversy must exceed $75,000. *Darden v. Ford Consumer Fin. Co., Inc.*, 200 F.3d 753, 755 (11th Cir. 2000); *see also* 28 U.S.C. §§ 1332(a), 1441(a).

AO 72A
(Rev.8/8
2)

Moreover, a civil action removable solely on the basis of diversity jurisdiction "may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought."  28 U.S.C. § 1441(b)(2). Defendants contend that removal was permissible because Aldridge was improperly–or fraudulently–joined.  [Doc. 1 at ¶¶ 11-13].

> The Eleventh Circuit explains fraudulent joinder as follows:
>
> Fraudulent joinder is a judicially created doctrine that provides an exception to the requirement of complete diversity.  Joinder has been deemed fraudulent in two situations.  The first is when there is no possibility that the plaintiff can prove a cause of action against the resident (non-diverse) defendant. *Coker v. Amoco Oil Co.,* 709 F.2d 1433, 1440 (11th Cir. 1983), *superceded by statute on other grounds as stated in Georgetown Manor, Inc. v. Ethan Allen, Inc.,* 991 F.2d 1533 (11th Cir. 1993) . . .  Turning to the first type, "If there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court."  *Coker,* 709 F.2d at 1440-41 (emphasis added).  The plaintiff need not have a winning case against the allegedly fraudulent defendant; he need only have a possibility of stating a valid cause of action in order for the joinder to be legitimate.

*Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998).

To determine whether fraudulent joinder exists, the district court must look to the complaint at the time it was removed as well as any affidavits and/or deposition transcripts submitted by the parties.  *Pacheco de Perez v. AT&T Co.*, 139 F.3d 1368,

11

1380 (11th Cir. 1998); *Manley v. Ford Motor Co.*, 17 F. Supp. 3d 1375, 1381 (N.D. Ga. 2014) (Batten, J.). "The standard . . . is a lax one. 'To determine whether the case should be remanded, the district court must evaluate the factual allegations in the light most favorable to the plaintiff and must resolve any uncertainties about state substantive law in favor of the plaintiff.' " *Stillwell v. Allstate Ins. Co., 663* F.3d 1329, 1330-1 (11th Cir. 2011) (quoting *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997)); *see also Henderson v. Wash. Nat'l Ins. Co.*, 454 F.3d 1278, 1281 (11th Cir. 2006) (quoting *Simmons v. Sonyika*, 394 F.3d 1335, 1338 (11th Cir. 2004)). In conducting this analysis, the court does not rely on Rule 12(b)(6)'s standard for evaluating a motion to dismiss, but rather evaluates a plaintiff's claims under the state's pleading standards. *Stillwell*, 663 F.3d at 1334. Under Georgia's notice pleading standard, all that is required is that "the pleading gives fair notice and states the elements of the claim plainly and succinctly." *Henderson*, 454 F.3d at 1281; *Wylie v. Denton*, 323 Ga. App. 161, 169-70, 746 S.E.2d 689, 696 (2013). Under this standard, "pleadings are to be construed liberally and reasonably[,]" and they are to "serve only the purpose of giving notice to the opposing party of the general nature of the contentions of the pleader." *Racette v. Bank of America, N.A.*, 318 Ga. App. 171, 180, 733 S.E.2d 457, 465 (2012) (internal quotations and citations omitted).

12

Moreover, " 'bad faith in the joinder is necessary. The defendant may show bad faith in joinder by proving that the plaintiff stated the facts knowing them to be false, or with enough information within reach so that he should have known them to be false.' " *Coker,* 709 F.2d at 1442 (quoting *Parks v. N.Y. Times Co.*, 308 F.2d 474, 478 (5th Cir. 1962)). However, " '[w]hen speaking of jurisdiction, 'fraudulent' is a term of art. Although false allegations of jurisdictional fact may make joinder fraudulent, in most cases fraudulent joinder involves a claim against an in-state defendant that simply has no chance of success, whatever the plaintiff's motive.' " *Coffman v. Dole Fresh Fruit Co.*, 927 F. Supp. 2d 427, 434 (E.D. Tex. 2013) (quoting *Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 73 (7th Cir. 1992)); *see also Manley*, 17 F. Supp. 3d at 1381 n.7 ("As many courts have noted, the term 'fraudulent joinder' is a bit of a misnomer—the doctrine requires neither fraud nor joinder." *Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 763 n.9 (7th Cir. 2009)). Indeed, the Fifth Circuit prefers the term 'improper joinder' because it is more consistent with the statutory language, though its meaning is substantively identical to 'fraudulent joinder.' [*Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 571 n.1 (5th Cir. 2004) (en banc)]") (punctuation altered).

13

2.      *Parties' Arguments*

It is undisputed that the amount in controversy requirement is satisfied since Plaintiff has asserted at least $214,900 in damages.  [Doc. 1-1 at ¶ 97].  It also undisputed that Plaintiff is a citizen of Georgia.  [*Id.* 1-1 at ¶ 9; Doc. 1 at ¶ 8].  Plaintiff alleges that Ocwen's primary place of business and registered agent are in Florida, MERS' primary place of business is in Delaware and its agent is in Virginia, and Aldridge's principal place of business is Georgia and its registered agent is in Florida. [*Id.* at ¶ 10].  In their Notice of Removal, Ocwen and MERS assert that Ocwen is a citizen of the U.S. Virgin Islands (where it is incorporated and maintains its principal place of business) and that MERS is a citizen of both Delaware and Virginia (where it is incorporated and maintains its principal place of business, respectively). [Doc. 1 at ¶¶ 9-10].  Therefore it is undisputed that MERS and Ocwen are not citizens of Georgia and diversity exists between MERS, Ocwen, and Plaintiff.  However, while Defendants concede that Aldridge is located in Georgia, they contend that "Aldridge's citizenship must be disregarded under the doctrine of fraudulent joinder."  [*Id.* at ¶ 11].

Defendants argue that Aldridge's joinder was fraudulent because Plaintiff's "theory of liability is not cognizable under Georgia law[.]"  [Doc. 1 at ¶ 13 (citing *McKenna Long & Aldridge, LLP v. Keller*, 267 Ga. App. 171, 173, 598 S.E.2d 892,

14

894-95 (2004); *Hunter v. Nationstar Mortg., LLC*, 684 Fed. Appx. 938, 942-43 (11th Cir. Apr. 11, 2017))]. Specifically, Defendants argue that Aldridge was merely an agent hired by the other Defendants to enforce Plaintiff's loan obligations by initiating foreclosure proceedings and, therefore, owed no duty to Plaintiff. [*Id.* at ¶¶ 13-14]. Moreover, Defendants submit that fraudulent joinder of foreclosure law firms is a common tactic by plaintiffs filing wrongful foreclosure claims who wish to avoid federal court. [*Id.* at ¶14].

Plaintiff asserts that Aldridge was not fraudulently joined because it proceeded with the foreclosure, despite being notified by Plaintiff that the foreclosure constituted "attempts to enforce a questionable instrument." [Doc. 9 at 3]. Plaintiff also asserts that all Defendants, including Aldridge, are liable for GMG's violation of the GRMA. [*Id.* at 3-4]. Defendants respond that there is no private cause of action under the GRMA. [Doc. 11 at 5 (citing *Kabir v. Statebridge Co., LLC*, No. 1:11-cv-2747-WSD, 2011 WL 4500050, at *9 (N.D. Ga. Sept. 27, 2011); *Jordan v. Novastar Mtg., Inc.*, No. 1:08-cv-3587-CAP, 2009 WL 10681130, at *2 (N.D. Ga. Sept 1, 2009) (holding that "the GRMA regulates and sets forth guidelines for mortgage lenders and brokers conducting business in Georgia. . . . However, the GRMA does not expressly provide individuals with a private right of action against [them].")); Doc. 12 at 4 (citing *Jordan*

15

*v. PHH Mortg. Corp.*, No. 1:10-cv-967, 2010 U.S. Dist. LEXIS 128854, at *20 (N.D. Ga. Nov. 5. 2010); *Reese v. Wachovia Bank. N.A.*, 1:08-cv-3461-GET, 2009 U.S. Dist. LEXIS 94802, at *5-8 (N.D. Ga. Feb. 23, 2009))].  Even if there were, Aldridge argues, the GRMA does not apply to foreclosure activities, which is Aldridge's sole involvement in the case.  [Doc. 12 at 4 (citing *Roylston v. Bank of Am., N.A.*, 290 Ga. App. 556, 558, 660 S.E.2d 412, 416 (2008) (granting summary judgment on plaintiff's GRMA claims challenging foreclosure sale))].

3.    *GRMA Claims*

The undersigned agrees that there is not a possibility that a state court would find that the complaint states a cause of action against Aldridge for GMG's violation of the GRMA.  [Doc. 1-1 at ¶¶ 65-80].  Assuming, without deciding, that GRMA provides a private right of action,[11] Plaintiff's allegations under GRMA are that Aldridge

---

[11]    In *Horne v. Harbour Portfolio VI, LP*, 304 F. Supp. 3d 1332, 1345 (N.D. Ga. 2018), Judge Story noted the split of authority in this District on the issue but ultimately concluded that the Georgia Court of Appeals had implicitly recognized a private right of action under the GRMA when it resolved *Geary v. Wilshire Credit Corp.*, 295 Ga. App. 620, 673 S.E.2d 15 (2009) (affirming dismissal of plaintiff's claim under GRMA for failure to present evidence of a violation of the statute, and *Roylston* (affirming dismissal because plaintiff's claim was based on actions taken during foreclosure and therefore not covered by the GRMA), on grounds other than lack of private cause of action.    Judge Story also relied upon O.C.G.A. § 51-1-8, which provides that "[p]rivate duties may arise from statute or from relations created by contract, express or implied [and t]he violation of a private duty, accompanied by

16

"concealed facts about a questionable mortgage and failed to abate the foreclosure sale pending a completion of its investigation in contravention of O.C.G.A. § 23-2-114 . . . [and] slander by publication . . . for contravening the doctrine of 'strict fairness' in accordance with O.C.G.A. § 23-2-114." [Doc. 1-1 at ¶ 75]. However, the GRMA does not apply to foreclosures, *Roylston*, 290 Ga. App. at 558, 660 S.E.2d at 416, so Aldridge has no liability under GRMA for any actions undertaken by it related to the foreclosure process. Second, O.C.G.A. § 23-2-114[12] pertains to the power of sale in deeds of trust and the Eleventh Circuit has held, in an action such as this one—where the plaintiff mortgagor, who was not a party to the assignment, brought an action

---

damage, shall give a right of action," *Horne*, 304 F. Supp. 3d at 1345, a reliance which the Court finds is appropriate.

> [12]     O.C.G.A. § 23-2-114 provides:
>
> Powers of sale in deeds of trust, mortgages and other instruments shall be strictly construed and shall be fairly exercised. . . . Unless the instrument creating the power specifically provides to the contrary, a personal representative, heir, heirs, legatee, devisee, or *successor of the grantee in a* mortgage, deed of trust, *deed to secure debt*, bill of sale to secure debt, or other like instrument, *or an assignee thereof*, or his personal representative, heir, heirs, legatee, devisee, or successor *may exercise any power therein contained; and such powers may so be exercised regardless of whether or not the transfer specifically includes the powers or conveys title to the property described.*

O.C.G.A. § 23-2-114 (emphasis added).

17

against the servicer, mortgagee, and MERS—that the plaintiff lacks standing to challenge the assignment. *Haynes v. McCalla Raymer, LLC*, 793 F.3d 1246, 1251 (11th Cir. 2015) (citing *Brown v. Freedman*, 222 Ga. App. 213, 474 S.E.2d 73, 75 (1996) ("A claim for wrongful exercise of power of sale under O.C.G.A. § 23-2-114 can arise when the creditor has no legal right to foreclose [such as where they do not possess a valid security deed].")); *see also Montgomery v. Bank of Am.*, 321 Ga. App. 343, 346, 740 S.E.2d 434, 436 (2013) (because assignment of security deed was contractual, plaintiff lacked standing to contest its validity because he was not a party to the assignment) (citing O.C.G.A. § 9-2-20(a) (which provides that an action based on a contract can be brought only by a party to the contract)); *Edward v. BAC Home Loans Serv., L.P.*, 534 Fed. Appx. 888, 891 (11th Cir. Aug. 16, 2013) (citing *Montgomery*). Finally, because Plaintiff is not current on her loan obligations, failure to make the proper loan payments or tender the amount due defeats any claim for wrongful foreclosure. *See Harvey v. Deutsche Bank Nat'l Trust Co.*, No. 1:12-cv-1612-RWS, 2012 WL 3516477, at *2 (N.D. Ga. Aug. 14, 2012) ("When the borrower cannot show that the alleged injury is attributable to the lender's acts or omissions, the borrower has no claim for wrongful foreclosure."); *Sellers v. Bank of Am., Nat'l Ass'n*, No. 1:11-cv-3955-RWS, 2012 WL 1853005, at *3

18

(N.D. Ga. May 21, 2012) (while plaintiffs alleged that defendants lacked authority to foreclose, plaintiffs failed to allege sufficient facts to show that they suffered any damage as a result); *Heritage Creek Dev. Corp. v. Colonial Bank*, 268 Ga. App. 369, 372, 601 S.E.2d 842, 845 (2004) (plaintiff's injury was "solely attributable to its own acts or omissions both before and after the foreclosure" because it defaulted on the loan payments, failed to cure the default, and did not bid on the property at the foreclosure sale).

As such, there is no possibility that Plaintiff could state a valid cause of action against Aldridge under the GRMA or O.C.G.A. § 23-2-114 (as outlined in Counts I-III of her complaint).

### 4.     *Contract Claims*

With respect to Plaintiff's breach of mortgage contract and good faith and fair dealing claims, [Doc. 1-1 at ¶¶ 101-106], the undersigned observes that Plaintiff has not asserted the existence of a contract between Plaintiff and Aldridge.  [*See* Doc. 1-1 *passim*].  Under Georgia law, a prerequisite for any breach of contract claim is a valid contract.  *See Kabir*, 2011 WL 4500050, at *7 (citing *TDS Healthcare Sys. Corp. v. Humana Hosp. Illinois, Inc.*, 880 F. Supp. 1572, 1583 (N.D. Ga. 1995)).  As Plaintiff has not alleged the existence of a contract, much less any provision that Aldridge

AO 72A
(Rev.8/8
2)

breached, she cannot bring cognizable breach of contract claims. *Id.* (citing *Am. Casual Dining, L.P. v. More's Sw Grill, L.L.C.*, 426 F. Supp. 2d 1356, 1370 (N.D. Ga. 2006)).

With respect to Plaintiff's claims that Aldridge breached covenants of good faith and fair dealing, a law firm owes no duty to its clients' adversary. *Hunt v. Nationstar Mortg., LLC et al.*, No. 1:14-cv003649-RWS-AJB, 2015 WL 11438599, *5 (N.D. Ga. Jul. 27, 2015) (citing *Viera v. Citigroup Inc.*, 1:12-cv-1636-TWT, 2012 WL 6194350, at *5 (N.D. Ga. Dec.2, 2012) (internal citations omitted); *Lett v. Bank of America, N.A.*, No. 1:13-cv-2055-RWS, 2014 WL 793605, at *3 (N.D. Ga. Feb. 27, 2014)) (R&R), *adopted*, 2015 WL 11622449 (N.D. Ga. Aug. 19, 2015), *aff'd in part*, 684 Fed. Appx. 938,  (11th Cir. Apr. 11, 2017).  While a law firm may be liable to the mortgagor for its own independent tortious conduct, simply proceeding with a foreclosure on behalf of its client does not rise to a civil action.  *See Viera*, 2012 WL 6194350 at *5; *see also McKenna Long & Aldridge, LLP*, 267 Ga. App. 171, 173-74, 598 S.E.2d 892, 894-95 (2004) (alleged failure of law firm to investigate adequately its client's allegations before sending demand letter to adverse party did not give rise to negligence action because firm owed no legal duty to non-client).  Indeed, Plaintiff has not asserted any specific duty owed by Aldridge and the undersigned finds

20

the law does not provide one. *But cf. Lett*, 2014 WL 793605 at *3 (finding that plaintiff stated a claim against foreclosing law firm where plaintiff's complaint alleged that law firm falsely published that she was in default, thus a Georgia court could find that plaintiff stated a claim for slander of title).

Even if Aldridge did owe a duty to Plaintiff, there is no possibility that her claims would be successful. First, Plaintiff claims this breach stems "from actions and damages enumerated in above Sections[.]" [Doc. 1-1 at ¶ 102]. Courts in this District have dismissed breach of good faith and fair dealing claims when they rely on preceding paragraphs, rather than setting forth specific factual support. *See Kabir*, 2011 WL 4500050, at *8. Second, the specific facts alleged with respect to Aldridge merely reiterate other claims. For example, Plaintiff claims that she seeks recovery from Aldridge for "breaches in fair dealings, and their failure to refrain from concealment of lending fraud with respect to the unlicensed entity" and "under the GRMA[.]" [Doc. 1-1 at ¶¶ 104-105]. However, these facts were already asserted (and rejected) with respect to Aldridge's alleged liability under GRMA. [*Id.* at ¶¶ 51-80]. Plaintiff cannot sustain a claim for a breach of good faith and fair dealing simply by inserting the words "fair dealing" onto her GRMA claims. Third, Plaintiff asserts that Aldridge "did not comply with requirements for disclosure to the Mortgagor.

21

[Doc. 1-1 at ¶ 106].  As  previously noted, Aldridge is not a party to the mortgage contract.  [*See* Doc. 3-1 *passim*].  As a result, Plaintiff has no possible claims against Aldridge with respect to any breach of contract or duty.

5.    *Foreclosure Claims*

As Defendants noted in their motions to dismiss, because Plaintiff has not alleged that a foreclosure occurred, [*id.* at ¶ 101], she fails to allege sufficient facts  to plead wrongful foreclosure.  [Docs. 3-1 at 6; 4-1 at 15].  Plaintiff brings her wrongful foreclosure claim under Georgia law, which " 'requires a plaintiff asserting a claim of wrongful foreclosure to establish a legal duty owed to it by the foreclosing party, a breach of that duty, a causal connection between the breach of that duty and the injury it sustained, and damages.' "  *DeGolyer v. Green Tree Servicing, LLC*, 291 Ga. App. 444, 448, 662 S.E.2d 141, 147 (2008) (quoting *Heritage Creek Dev. Corp.*, 268 Ga. App. at 371, 601 S.E.2d at 844); *Abdullahi v. Bank of Am., N.A.*, 549 Fed. Appx. 864, 866 (N.D. Ga. Nov. 20, 2013) ("Because [Bank of America] was the only 'foreclosing party' and because Abdullahi failed to allege that either Freddie Mac or Pendergast owed him a specific legal duty, the district court dismissed properly Abdullahi's claim for wrongful foreclosure against Freddie Mac and Pendergast."); *Thompson-el v. Bank of Am., N.A.*, 327 Ga. App. 309, 759 S.E.2d 49, 52 (2014) ("[A]s

22

to the remaining defendants . . . a claim for wrongful foreclosure will not lie because, in the framework of [plaintiff's] complaint, none of them acted as a secured lender or [were] otherwise involved in foreclosing on her property."); *see also McDonald-Forte v. Merrill Lynch Mortg. Inv'rs Trust, Series MLCC 2004*-D, No. 1:14-CV-1660-WSD, 2015 WL 4928715, at *3 (N.D. Ga. Aug. 18, 2015) ("The Trust is not the entity that foreclosed on the Property and Plaintiffs fail to allege that the Trust owed them a specific legal duty.  Plaintiffs cannot assert a claim for wrongful foreclosure against the Trust.").

Although Plaintiff is now pro se, she was previously represented by an attorney who drafted and signed her complaint.  [Doc. 1-1- at 35].  Therefore, the undersigned need not construe her complaint liberally, as encompassing claims for attempted wrongful foreclosure.  *Cf. Erikson v. Pardus*, 551 U.S. 89, 94 (2007) (A "document filed *pro se* is 'to be liberally construed,' . . . , and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'") (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *see also Mederos v. United States*, 218 F.3d 1252, 1254 (11th Cir. 2000) (discussing that pro se filings are entitled to liberal construction); *Powell v. Lennon*, 914 F.2d 1459, 1463 (11th Cir. 1990). *Cf. McQueen v. Ala. Dep't of Trans.*, No. 2:17-CV-215-TFM,

23

2018 WL 2709319, at *4 (M.D. Ala. June 5, 2018) (holding that where complaint and response to motion to dismiss were drafted by lawyer, although plaintiff now appearing pro se, the court was not required to currently apply any pro se liberal interpretation to amended complaint or response to the motion to dismiss).  However, should the District Judge construe Plaintiff's claims as asserting attempted wrongful foreclosure, the undersigned will address that claim as well.

In order to assert a claim for attempted wrongful foreclosure under Georgia law, a plaintiff must allege " 'a knowing and intentional publication of untrue and derogatory information concerning the debtor's financial condition, and that damages were sustained as a direct result of this publication.' "  *Jenkins v. McCalla Raymer, LLC*, 492 Fed. Appx. 968, 972 (11th Cir. Oct. 25, 2012) (quoting *Aetna Fin. Co. v. Culpepper*, 171 Ga. App. 315, 320 S.E.2d 228, 232 (1984)); *see also Morgan v. Ocwen Loan Servicing, LLC*, 795 F. Supp. 2d 1370, 1377 (N.D. Ga. 2011) (Totenberg, J.) (citing cases).

Aldridge argues that Plaintiff cannot assert claims of attempted wrongful foreclosure because she "fails to allege facts sufficient to show that any information published . . . regarding Plaintiff's financial condition was untrue or derogatory." [Doc. 3-1 at 8].  Although not clearly set forth in Plaintiff's complaint, Plaintiff claimed

24

that Aldridge "misrepresented the amount due for collections" and "published misleading public notices to foreclosure[.]"  [Doc. 1-1 at ¶ 17 (citing Exs. F, G)]. Notably, the exhibits cited by Plaintiff are not public notices.  Exhibit G is a letter, dated June 8, 2017, from Aldridge addressed solely to Plaintiff which outlines the debt owed.  [Doc. 1-1 at 57].  Exhibit F is a letter, dated July 20, 2017, from Plaintiff to Aldridge, ostensibly responding to Exhibit G and contesting the validity of the debt owed.  [*Id.* at 51-6].  Even assuming that Aldridge made incorrect statements about Plaintiff's debt, the citations relied upon by Plaintiff show that these statements were not public and, therefore, Plaintiff cannot assert a claim for attempted wrongful foreclosure.

6.     *Remaining Claims Against Aldridge*

Plaintiff has failed to assert sufficient facts to support her slander of title of title (under O.C.G.A. § 51-9-11), trespassing (under O.C.G.A. § 51-9-4), and false light invasion of privacy claims (designated in the complaint as Count III).  [Doc. 1-1 at ¶¶ 96-100].

Under Georgia law, "[t]he owner of any estate in lands may bring an action for libelous or slanderous words which falsely and maliciously impugn his title if any damage accrues to him therefrom."  O.C.G.A. § 51-9-11.  To state a claim of slander

AO 72A
(Rev.8/8
2)

of title under O.C.G.A. § 51-9-11, "a plaintiff must prove possession of an estate in the subject property; publication of defamatory words against the property; that the words were false and malicious; and that the plaintiff sustained special damages by loss in the value of the slandered property." *M&M Mortg. Co. v. Grantville Mill, LLC*, 302 Ga. App. 46, 50, 690 S.E.2d 630, 633 (2010).

Here, Plaintiff sufficiently outlines specific damages "caused by slander of title" [Doc. 1-1 at ¶ 97]. *Cf. Cornelius v. Bank of Am., N.A.*, Civil Action No. 1:12-cv-0585-JEC, 2012 WL 4468746, at *4 (N.D. Ga. Sept. 27, 2012) ("millions of dollars without further explanation" that were insufficient to properly plead special damages). However, the complaint does not allege that Aldridge uttered or published public statements against the Property. *See supra* Section II(A)(5). Second, even if Aldridge had uttered such statements, it is unclear how such would amount to slander of title, as Plaintiff's theories regarding Aldridge's liability as foreclosure counsel fail as a matter of law, and there is no indication that statements validating Defendants' interest in the Property would be false or malicious. Likewise, Plaintiff's claim of false light invasion of privacy, which Plaintiff admits requires "that the publicity was false," [Doc. 1-1 at ¶ 98 (citing *Brown v. Capricorn Records*, 136 Ga. App. 818, 819, 222 S.E.2d 618, 619 (1975))], fails. Additionally, it goes without saying that it is impossible for

26

Plaintiff to assert a claim that Aldridge trespassed based solely on an unadorned citation "to O.C.G.A. § 51-9-4 for ongoing trespassing." [*Id.*].

Accordingly, the Court concludes that there is no possibility that a state court would find that the complaint states a cause of action against Aldridge and, therefore, its presence as a named defendant does not act to defeat diversity jurisdiction supporting removal. As a result, the Court further concludes that the case was properly removed from state court. Therefore, the undersigned **RECOMMENDS** that the District Court **DISMISS** claims against Aldridge due to fraudulent joinder and **DENY** Plaintiff's motion to remand the case, [Doc. 9].

## B.   Motion for More Definite Statement, Construed as a Motion to Amend

It appears that Plaintiff's Motion for a More Definite Statement is, in fact, a motion to amend, as she states that "if this Court retains jurisdiction, then Plaintiff's complaint must be revised to meet he [sic] federal pleading standards. Alternatively it should be applicable to grant the Plaintiff leave to amend under Fed. R. Civ. P. Rule 15(a)." [Doc. 9 at 6]. Rule 15(a)(1) of the Federal Rules of Civil Procedure allows a party to amend a pleading as a matter of right within twenty-one days after service of the original pleading, or, if the pleading is one to which a responsive pleading is required, twenty-one days after service of a responsive pleading or service

27

of a motion under Rule 12(b), (e), or (f), whichever is earlier.  Thereafter, a party may amend a pleading "only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2). Here, Plaintiff's amended complaint would be filed over twenty-one days after service of the original pleading. [Doc. 1-1].  As a result, she must seek leave of the Court to amend her complaint.

The Supreme Court has held that "[i]n the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc. – the leave sought should, as the rules require, be 'freely given.' " *Foman v. Davis*, 371 U.S. 178, 182 (1962).  Rule 15 "contemplates that leave shall be granted unless there is a substantial reason to deny it."  *Halliburton & Assoc., Inc. v. Henderson, Few & Co.*, 774 F.2d 441, 443 (11th Cir. 1985).  Additionally, the Eleventh Circuit has indicated that where a plaintiff is proceeding pro se and "it appears that a more carefully drafted complaint might state a claim, the district court should give the *pro se* plaintiff an opportunity to amend his complaint instead of dismissing it."

28

*Schmitt v. U.S. Office of Personnel Mgmt.*, 403 Fed. Appx. 460, 462 (11th Cir. Nov. 23, 2010).

The undersigned cannot ascertain if it should grant Plaintiff leave to amend because Plaintiff has not indicated how she intends to amend her complaint by, for example, attaching a copy of the new complaint. [Doc. 9].

> Filing a motion is the proper method to request leave to amend a complaint. Federal Rule of Civil Procedure 7(b)(1) provides that "[a]n application to the court for an order shall be by motion which, unless made during a hearing or trial, shall be made in writing, shall state with particularity the grounds therefor, and shall set forth the relief or order sought." (emphasis added). A motion for leave to amend should either set forth the substance of the proposed amendment or attach a copy of the proposed amendment. *See Wisdom v. First Midwest Bank*, 167 F.3d 402, 409 (8th Cir. 1999) ("[P]arties should not be allowed to amend their complaint without showing how the complaint could be amended to save the meritless claim.")

*Long v. Satz*, 181 F.3d 1275, 1279 (11th Cir. 1999) (per curiam). Without any information about whether amendment would cure the deficiencies of Plaintiff's present claims, the undersigned does not find that justice requires granting Plaintiff leave to amend her complaint. Accordingly, the undersigned **DENIES** Plaintiff's construed motion to amend.

29

### III.   *Defendants' Motion to Dismiss*

#### A.   **Legal Standard**

Defendants Ocwen and MERS seek dismissal under Fed. R. Civ. P. 12(b)(6).  To avoid dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   And while a complaint need not contain detailed factual allegations, mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *accord Iqbal*, 556 U.S. at 678-79 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" and are "not entitled to the assumption of truth.").   Rather, plaintiffs are required to make factual allegations that are "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.   Complaints must "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Fin. Sec. Assurance, Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1282-83 (11th Cir. 2007) (per curiam) (internal quotation marks omitted).  The court also may dismiss a complaint pursuant to Rule 12(b)(6) when, on

30

the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action. *Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993).

### B.   Claims Premised on GRMA

The first three "causes of action" in Plaintiff's complaint center around Defendants' alleged liability for GMG's violation of the GRMA. [Doc. 1-1 at ¶¶ 36[13]-80]. Even assuming that Plaintiff has a private right of action under GRMA, her claims fail because Ocwen and MERS are not liable for GMG's GRMA violation.

To the extent that Plaintiff's GRMA claims are centered on fraud, Defendants assert that such claims are barred by Georgia's four-year statute of limitations because the loan closed in 2006 and Plaintiff fails to allege facts that would allow for equitable tolling. [Doc. 4-1 at 6 (citing O.C.G.A. § 9-3-31, *Hanna v. McWilliams*, 213 Ga. App. 648, 650 446 S.E.2d 741, 743 (1994))]. The undersigned agrees. *See Hamburger v. PFM Capital Mgmt., Inc.*, 286 Ga. App. 382, 387-88, 649 S.E.2d 779, 784 (2007) ("[B]ecause [the plaintiff] has not come forward with evidence that the purported misrepresentation and resulting losses occurred less than four years before

---

[13]    "Plaintiff alleges that her mortgage fraud occurred . . . during the course of her loan origination in May 2006 in contravention to the GRMA statute." [Doc. 1-1 at ¶ 36]

31

she filed her complaint, her fraud claim is barred by the statute of limitation unless she can show that the statute was tolled."). Plaintiff has not pleaded or established that the statute of limitations was tolled.

Defendants also submit that Plaintiff has failed to plead fraud with requisite particularity as required under Fed. R. Civ. 9(b) and Georgia common law. [Doc. 4-1 at 7-8 (citing *Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1277 (11th Cir. 2006); *Ziemba v. Cascade Intern., Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2011)); Doc. 3-1 at 9-10 (citing *Parsells v. Orkin Exterminating Co., Inc.*, 172 Ga. App. 74, 75, 322 S.E.2d 91 (1984))]. Again, the undersigned agrees. To plead a fraud claim with particularity, " 'a plaintiff must plead facts as to time, place, substance of the defendants alleged fraud, specifically the details of the defendant's allegedly fraudulent acts, when they occurred, and who engaged in them.' " *Brazil v. Janssen Research & Dev. LLC*, 249 F. Supp. 3d 1321, 1339 (N.D. Ga. 2016) (quoting *Jenkins v. BAC Loan Servicing LP*, 822 F. Supp. 2d 1369, 1380 (M.D. Ga. 2011) (internal quotation marks and citation omitted)). "This means that to state an actionable claim for fraud, the plaintiff must state the who, what, when[,] where, and how." *Id.* (internal quotation marks and citation omitted). Indeed, the complaint was signed (and presumably

32

drafted) by counsel and the failure to identify which Defendants made what precise statements that were untrue or when they made them, is insufficient to plead fraud.

As discussed in Section II(A)(3) *supra*, Plaintiff also references O.C.G.A. §§ 14-2-204 and 23-2-114 in an effort to hold Defendants liable for GMG's alleged GRMA violation.  [*See* Doc. 1-1 at 47-48, 72].  Those claims fails with respect to Defendants Ocwen and MERS for the same reasons they failed with respect to Aldridge, namely: (1) they are unadorned statutory citations insufficient to plead plausible claims; (2) the record does not reflect that GMG was unincorporated (within the meaning of O.C.G.A. § 14-2-204) at the time the Deed was executed or assigned; and (3) Plaintiff lacks standing (under O.C.G.A. § 23-2-114) to challenge a mortgage assignment to which she was not a party.[14]

Accordingly, the undersigned **RECOMMENDS** that Plaintiff's GRMA and fraud claims, [Doc. 1-1 at ¶¶ 35-80], against Ocwen and MERS be **DISMISSED.**

### C.   Plaintiff's Wrongful Foreclosure and Other Property Claims

As discussed in Section II(A)(4) *supra*, because Plaintiff has not alleged that a foreclosure occurred, [Doc. 1-1 at ¶ 101], she fails to allege sufficient facts to plead

---

[14]     Also as discussed Section II(A)(3) *supra*, Plaintiff's "Fourth Cause of Action," seeking to invalidate MERS' transfer to Deutsche Bank, fails to these same reasons**.**  [Doc. 1-1 at ¶¶ 81-87].

33

wrongful foreclosure.  [Docs. 3-1 at 6; 4-1 at 15].  Further, should the District Court construe Plaintiff's claims liberally as encompassing claims for attempted wrongful foreclosure, she has not alleged that Defendants published untrue or derogatory information about her financial condition.

Accordingly, the undersigned **RECOMMENDS** that OcWen and MERS' motion to dismiss be **GRANTED** and that Plaintiff's wrongful foreclosure claims, [Doc. 1-1 at ¶ 101], and construed attempted wrongful foreclosure claims be **DISMISSED**.

Similarly, and as discussed, Section II(A)(6) *supra*, Plaintiff has failed to assert sufficient facts to support her slander of title of title (under O.C.G.A. § 51-9-11), trespassing (under O.C.G.A. § 51-9-4), and false light invasion of privacy claims because the complaint does not allege that Defendants uttered or published public statements against the Property and, even if they had, there is no indication that statements validating Defendants' interest in the Property would be false or malicious. Likewise, Plaintiff's unadorned citation to O.C.G.A. § 51-9-4 for "ongoing trespassing" fails to meet basic pleading standards.

Accordingly, the undersigned **RECOMMENDS** that Ocwen's and MERS' motion to dismiss Plaintiff's trespassing, slander of title, and false light invasion of

AO 72A
(Rev.8/8
2)

privacy claims, [Doc. 1-1 at ¶¶ 96-100], claims be **GRANTED** and that the claims be **DISMISSED**.

### F.    Plaintiff's Breach of Contract and Good Faith Claims

With respect to Plaintiff's breach of mortgage contract and good faith and fair dealing claims, [Doc. 1-1 at ¶¶ 101-106], she has not asserted the existence of a contract between herself and Defendants Ocwen or MERS.  [Doc. 1-1 at *passim*].  As discussed Section II(A)(4) *supra*, Plaintiff's failure to identify a valid contract between herself and MERS or Ocwen is fatal to her breach of contract claims.

Although MERS was listed as a nominee for GMG in the Deed, it is unclear how MERS is liable for breaching it "by engagements in unjust accelerations against a questionable and voided contract." [Doc. 1-1 at ¶ 101].  First, Plaintiff has not alleged sufficient facts to determine if MERS did, in fact, accelerate the loan.  In Plaintiff's previous case before this Court, Judge Brill found that acceleration occurred in 2014, after MERS had already assigned the Deed to Deutsche Bank in 2009.  *Smedley v. Deutsche Bank Trust Company Americas and McCurdy & Candler, LLC*, No. 1:14-cv-00283-ELR-GGB, Doc. 33 at 8-9.  As MERS transferred its interest to Deutsche Bank prior to the acceleration, it is axiomatic that MERS could not engage in any acceleration.

AO 72A
(Rev.8/8
2)

Second, the Deed allows transfer of rights in the Property to "Successors and assigns of MERS[.]"  [Doc. 3-1 at 24].  Consequently, Plaintiff fails to show that MERS' assignment voided the contract and, thus, prevented Ocwen from accelerating the loan, if in fact that is what occurred.   Accordingly, the undersigned **RECOMMENDS** that Plaintiff's breach of contract claims, [Doc. 1-1 at ¶ 101], be **DISMISSED**.

Plaintiff also claims that MERS and Ocwen breached covenants of good faith and fair dealing with "their failure to refrain from concealment of lending fraud with respect to the unlicensed entity[,]" "under the GRMA[,]" and that Ocwen "sought to accelerate the indebtedness by non-judicial foreclosure in contravention of Section 18 and 22 of the Security Deed and in contravention of O.C.G.A. § 23-2-114."  [Doc. 1-1 at ¶¶ 103-106].  As discussed in Section II(A)(4) *supra*, Plaintiff cannot sustain a claim for a breach of good faith and fair dealing simply by inserting the words "fair dealing" onto her GRMA claims.  Moreover, as discussed in Section II(A)(3) *supra*, Plaintiff lacks standing under O.C.G.A. § 23-2-114 to challenge a mortgage assignment to which she was not a party.

Accordingly, the undersigned **RECOMMENDS** that Plaintiff's breach of good faith and fair dealing claims against Ocwen and MERS be **DISMISSED**.

36

Plaintiff's remaining claims against Ocwen concern sections of the Deed pertaining to notice requirements in the event of acceleration. [Doc. 1-1 at 32-33; Doc. 1-1 at ¶ 106]. Section 18 of the deed pertains to acceleration in the event that the borrower (in this case, Plaintiff) transfers her interest or beneficial interest in the property without lender's approval. [Doc. 3-1 at 32]. As Plaintiff has not asserted that she  transferred her interest, this section is inapplicable.

Section 22 pertains to the lender's option to accelerate in the event of the borrower's breach.   [*Id.* at 33]. In Plaintiff's prior action in this Court, it was determined that the acceleration was initiated by Deutsche Bank, through a May 31, 2013 letter addressed to Plaintiff by Ocwen. *Smedley*, No. 1:14-cv-00283-ELR-GGB, Docs. 33 at 8-9, 19-21 (citing [Doc. 18-5]); 38 at 4.  In addressing the issue of whether Deutsche Bank, through Ocwen, complied with Section 22 of the Deed, the judges held that Plaintiff defaulted on the loan (thereby breaching the contract), and Deutsche Bank accelerated the loan in accordance with the notice requirements. *Id.*, Docs. 33 at 7, 17-24; 38 at 4.  As the issue of whether Ocwen (as servicer for Deutsche Bank) permissibly accelerated the mortgage and gave notice under Section 22 of the Deed was fully litigated in the previous action and a final judgment was entered, the doctrines of

AO 72A
(Rev.8/8
2)

issue preclusion or collateral estoppel preclude Plaintiff from raising these claims in the instant case.

"[C]ollateral estoppel precludes the relitigation of an issue that has already been litigated and resolved in a prior proceeding." *Pleming v. Universal-Rundle Corp.*, 142 F.3d 1354, 1359 (11th Cir. 1998); *see also Manning v. City of Auburn*, 953 F.2d 1355, 1358 (11th Cir. 1992) ("Collateral estoppel, or issue preclusion, 'recognizes that suits addressed to particular claims may present issues relevant to suits on other claims' . . . and requires that the identical issue in question was actually litigated and necessary to the judgment of an earlier suit.") (citation omitted). "The following elements must be established before collateral estoppel applies: (1) the issue at stake must be identical to the one decided in the prior litigation; (2) the issue must have been actually litigated in the prior proceeding; (3) the prior determination of the issue must have been a critical and necessary part of the judgment in that earlier decision; and (4) the standard of proof in the prior action must have been at least as stringent as the standard of proof in the later case." *In re Southeast Banking Corp. v. Bassett*, 69 F.3d 1539, 1552 (11th Cir. 1995). In resolving a claim of issue preclusion, "[a] court 'must look to the factual issues to be resolved [in the second cause of action], and compare them with the issues explored in' the first cause of action." *Manning*,

38

953 F.2d at 1359 (quoting *S.E.L. Maduro v. M/V Antonio De Gastaneta*, 833 F.2d 1477, 1482 (11th Cir. 1987)).

First, the issues in Plaintiff's previous lawsuit and the current one–to the extent that they are intelligible–are identical.  In both suits, Plaintiff alleges that Deutsche Bank and its agents breached the contract comprised of Section 22 the Deed by improperly accelerating the mortgage.  *Compare Smedley*, No. 1:14-cv-00283-ELR-GGB, Docs. 16 at ¶¶ 13-20, 28-34; 33 at 8-9, 19-21 (citing [Doc. 18-5]); 38 at 4, *with* [Doc. 1-1 at ¶ 106].  While Plaintiff may have altered the language of each count, and attempted to shift the blame to Ocwen in the instant case, the facts underlying Plaintiff's claims in both cases remain the same; Plaintiff asserts that the acceleration (which Ocwen provided written notice of on behalf of Deutsche Bank in 2013) did not comply with section 22 of the Deed.  *Id.*  In Plaintiff's prior case, the court disagreed, holding that Deutsche Bank had the right to accelerate the mortgage and that its agent, Ocwen, notified Plaintiff of acceleration in conformance with section 22 of the Deed. *Smedley*, No. 1:14-cv-00283-ELR-GGB, Docs. 33 at 8-9, 19-21; 38 at 4.  As a result, Plaintiff's claim in this case against Ocwen involving section 22 of the Deed is identical to the claim already litigated.

AO 72A
(Rev.8/8
2)

Second, this issue was a critical and necessary part of the a final decision of the previous judgment, using virtually the same standard of proof, after the parties had a full opportunity to adjudicate the issue. Specifically, the District Judge granted Defendants' motion for summary judgment with respect to Plaintiff's breach of contract claims–after both parties filed briefs, and R&R was issued, and the parties filed objections to the R&R–and dismissed Plaintiff's complaint. *Id.*, Docs. 33-38. Therefore, all the collateral estoppel factors are met and Plaintiff's breach of contract claim against Ocwen premised on section 22 of the Deed is precluded.

Accordingly, the undersigned **RECOMMENDS** that the District Judge **GRANT** Defendants' Motion and **DISMISS** Plaintiff's breach of contract and good faith/fair dealing claims

## IV.   Conclusion

For the reasons set forth herein, the undersigned **DENIES** Plaintiff's construed motion to amend, [Doc. 9], and **RECOMMENDS** that Plaintiff's motion to remand, [Doc. 9], be **DENIED**, Defendants' motions to dismiss, [Docs. 3, 4], be **GRANTED**, and that Plaintiff's complaint be **DISMISSED**.

The Clerk of the Court is **DIRECTED** to terminate the reference to the undersigned.

40

AO 72A
(Rev.8/8
2)

**IT IS SO RECOMMENDED and DIRECTED**, this the 23rd day of July, 2018.

_____
ALAN J. BAVERMAN
UNITED STATES MAGISTRATE JUDGE

41